The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| TONY EDWARD FEHN AND | ) | CASE NO. 10-60518 |
| SONIA JUNE FEHN, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |

Debtors' chapter 13 plan proposes to strip the lien of the second mortgage holder, Canton School Employees Federal Credit Union ("CSE"). Debtors filed a motion to determine the value of their residential real estate, initially relying on the $115,000.00 valuation provided by the chapter 13 appraiser. CSE objected, arguing that the value is $140,000.00. Debtors later obtained an independent appraisal for $104,000.00. The court held an evidentiary hearing on September 23, 2010.

Jurisdiction is premised in 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. The following constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

1

## FACTS

The subject property is located at 4615 California Avenue, Louisville, Ohio. Debtor Tony Edward Fehn is the fee owner of the property, which is Debtors' residential real estate. Debtor Tony Fehn purchased the home in 2004 for $114,000.00.[1] Cenlar, FSB holds the first mortgage on the property. CSE holds the second mortgage.

The house is a 49 year old partial brick ranch on almost one-half acre of land. The main floor includes three bedrooms and one bathroom. The original attached garage was converted to a family room, and new attached garage space added. The basement is partially finished and includes a den, rec room, bedroom and bathroom.

Debtor obtained a loan from CSE on June 8, 2007 and provided a mortgage to secure the loan. The purpose of the loan was for home improvements. At the time of the loan, the property appraised for $137,000.00. Over the next two years, Debtor made substantial improvements to the property, including a new roof, gutters, down spouts, windows, fascia, a screened deck with a roof, vinyl siding, landscaping, a koi pond, and a new furnace and air conditioning system. Debtor finished the basement. He also added a garage, turning the old garage space into a family room with a tongue-in-groove cathedral ceiling with a ventless gas fireplace. Most of the work was done by Debtor personally, although he did use some contract help for the garage. In 2008, he took out an additional $5,000.00 loan for home improvements, and the loan was consolidated with the previous loan. This money went toward the improvements previously listed.

CSE's appraiser is James A. Vega, a state certified appraiser. He appraised the property on three occasions: on February 13, 2010, he valued the property at $140,000.00; on June 8, 2009, he valued the property at $160,000.00; and on May 4, 2007, he found the property value was $137,000.00. Scott Young Boli, also a certified residential appraiser in Ohio, appraised the property for Debtors on July 27, 2010 at $104,000.00. The chapter 13 appraisal, performed by David E. Conant, is also part of the record. He found the value was $115,000.00 as of February 27, 2010.

Debtor, James A. Vega, and Scott Boli testified at the hearing. All were credible, although Mr. Vega's testimony tended to be more compelling.

## ANALYSIS

The valuation dispute is a purely fact-driven. The burden of proof rests with Debtors.

---

[1] Debtor Tony Fehn was a co-owner at the time of purchase and later bought the other co-owner's interest in the property.

2

*See* Weichy v. Nextier Bank, N.A. (In re Weichy), 405 B.R. 158 (Bankr. W.D. Pa. 2009). The court notes the difficulty in determining values in today's environment. Values changed dramatically and rapidly and have not recovered. This leaves the court with a firm conviction that the only true value of a home is the amount a buyer, with financing, is willing to pay. For every compelling fact that impacts value, there is an equally compelling counter-consideration. In this case, the difficulties are exacerbated. First, the home was subject to extensive remodeling work by the Debtor personally. Second, good comparable sales were not available. The comparable sales that were provided were contested. As the court pointed out at the end of the hearing, this was not a clean one to compare.

The first material dispute centered on the square footage of the home. Mr. Vega claims the house is 1,648 square feet, while Mr. Boli's measurements indicate it is 1,484 square feet. Mr. Conant lists a home with 1,616 square feet, resulting in a material discrepancy. Upon review of the testimony and record, the court accepts Mr. Vega's figure. First, Mr. Vega appraised the property on three separate occasions. In Mr. Vega's first appraisal, the above-grade square footage was 968 square feet. After the conversion of the garage space, the above-grade living area increased to 1,648 and this figure was constant in the second and third appraisals. Further, Mr. Conant's figure is also over 1600 square feet. Mr. Vega also testified that he personally hand-measured the house on four separate occasions. His testimony was credible and convincing, plus his measurements compare to those listed in the auditor's card. Therefore, the court will use the 1,648 figure as the square footage of the home.

With the resulting additional 164 square feet of living space, Mr. Boli's appraisal requires an upward adjustment. His calculations indicate an approximate value of $70.00 per square foot, for a total of $11,480.00. Thus, the baseline value for Mr. Boli's appraisal must be adjusted to $115,480.00.

The parties decried the comparables used in the opposing appraisals. On Debtor's side, Mr. Boli objected to the use of a two-story home as comparable to a one-story home. He pointed out that some buyers would not consider a two-story home, so the market can be very different for each style. His point has merit. He also alluded to the difficulties in valuing adjustments to equalize the subject property to a comparable sale.

Mr. Vega, in turn, objected to Mr. Boli's classification of the home's condition as "average." Because of the recent, extensive remodeling and new materials, he finds the condition to be above average. The court must agree. Debtor testified as to the thousands of dollars he spent on the substantial interior and exterior improvements. Generally, the materials are less than four years old, so it is reasonable to conclude they would be in above average condition. The pictures of the subject do not lead the court to a different conclusion.

The comparables utilized by Mr. Boli were also scrutinized. According to Mr. Vega, he failed to "bracket" the subject appropriately and utilized comparables that were not, in

3

fact, comparable. He indicated the first comparable used by Mr. Boli was bank-owned; two were bungalows, not ranches; and one was a sale from a trust, which may not have been at arm's length. Similar to Mr. Boli, he contested the valuation figures used to make adjustments for the comparables.

In spite of the numerous disagreements between the appraisers on the comparables, they are in accord on one comparable: 141 Menegay Road ("Menegay"). Mr. Conant also utilized Menegay in his appraisal. Consequently, the court gives great deference to the one comparable used by all three appraisers.

The Menegay property is approximately .27 miles from the subject. It closed in late August, 2009. It sold for $123,500.00.[2] It is 47 years old, so its actual age is very close to the subject. It is also an all brick ranch home in a suburban/average residential neighborhood. It is slightly smaller (1,440 square feet) than the subject, on a slightly smaller lot (.317 acres).

Mr. Vega noted the following valuation adjustments to the Menegay property:

- $1,000 (location, busy road)
- $2,500 (all brick structure)
+ $5,500 (overall condition)
+ $2,500 (smaller size)
+ $1,800 (full finished basement)
+ $   800 (covered patio v. screened deck, koi pond)

After his adjustments, Mr. Vega arrived at a comparable price of $130,600.00.

Mr. Boli only made two adjustments to Menegay: he found its condition to be superior (-$8,000) and credited it for two fireplaces (-$5,000). As a result, he arrived at an adjusted figure of $110,500.00. After accounting for the square footage difference noted above, this would result in a comparable figure of $121,980.00. Thus, the parties' valuations differ by less than $10,000.00.

There is a $13,500 spread based on the condition: Mr. Boli believes the subject is in poorer condition than Menegay, which reduces the value, while Mr. Vega finds the subject to be in better condition, resulting in an adjustment in the opposite direction. No explanation of these differences was provided at the hearing and the court cannot fully reconcile the differences. Mr. Boli's $8,000 adjustment for the condition seems excessive, especially after

---

[2] Notably, this is in the same time frame that Mr. Vega appraised the subject property for the second time. In June 2009, he found the subject property was worth $160,000.00. His own comparable indicates that his June 2009 appraisal was considerably over-estimated.

4

determining that the subject property is not of average condition. However, the court notes that Mr. Boli did not account for the fact that Menegay was an all brick home, which generally augments a home's value. Likewise, a $5,000 reduction for two fireplaces is disproportionate. It seems incredulous that the fireplaces accounted for 4% of the Menegay value. Accordingly, the court favors Mr. Vega's adjustments as a more reasonable estimation. Finally, neither party made an effective argument for variances in value due to market volatility and the particular point in time of the evaluation.

## CONCLUSION

Both appraisers noted Menegay as a relevant comparable to the subject property. Mr. Boli's adjustments are suspect and clearly not as thorough as Mr. Vega's. In this regard, Debtor failed to meet its burden of proof. Therefore, the court accepts Mr. Vega's adjustments as more reflective of actual value. The court determines that the value of 4615 California Ave., Louisville, Ohio is $130,600.00.

An order will be entered immediately.

# # #

## SERVICE LIST

Gerald B Golub
1340 Market Ave North
Suite 1
Canton, OH 44714

Tony Edward Fehn
Sonia June Fehn
4615 California Ave
Louisville, OH 44641

Alfred D. McCallin
500 Courtyard Centre
Canton, OH 44702